IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ORTHOPAEDIC CENTERS OF WISCONSIN, S.C.,
d/b/a STEVENS POINT ORTHOPEDICS,

        Plaintiff,                      Case No. 3:21-cv-00179

    v.

EXOS PHYSICAL THERAPY & SPORTS MEDICINE, LLC,
f/k/a D1 SPORTS MEDICINE, LLC,

        Defendant.

---

## COMPLAINT

---

NOW COMES Plaintiff, Orthopaedic Centers of Wisconsin, S.C., d/b/a Stevens Point Orthopedics, by Axley Brynelson, LLP, by Michael J. Modl and Morgan K. Stippel, and for their Complaint against Defendant, EXOS Physical Therapy & Sports Medicine, LLC, f/k/a D1 Sports Medicine, LLC, states and alleges as follows:

## PARTIES

1.    Orthopaedic Centers of Wisconsin, S.C., d/b/a Stevens Point Orthopedics ("OCOW/SPO"), is a Wisconsin close service corporation having a principal place of business in Stevens Point, Wisconsin.

2.    EXOS Physical Therapy & Sports Medicine, LLC, f/k/a D1 Sports Medicine, LLC ("EXOS/D1"), is a Delaware limited liability company having a principal place of business in Phoenix, Arizona.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the controversy is between citizens of different States.

4. The Court has personal jurisdiction over EXOS/D1, because it does business in the State of Wisconsin, and the conduct described herein occurred exclusively in the State of Wisconsin.

5. Venue is proper in this Court because OCOW/SPO's injuries and damages occurred in the Western District of Wisconsin, EXOS/D1 conducts business in the Western District of Wisconsin, and all of the occurrences described herein occurred in the Western District of Wisconsin.

## FACTUAL BACKGROUND

6. Klasinski Clinic, S.C. ("Klasinski") and D1 Sports Medicine, LLC ("D1") entered into a Therapy Management Agreement (the "Agreement") on or around April 1, 2016. A true and correct copy of the Agreement is attached hereto as <u>Exhibit A</u> and incorporated herein by reference.

7. The Agreement provides for a three-year (36-month) initial term, which commenced on the date the first patient was seen in therapy.

8. The Agreement contemplates that D1 may agree to provide services at additional Klasinski locations, in which case the initial term of the Agreement would commence on the date D1 provided services to the first patient at the last location for which D1 provides services. Stated otherwise, the initial three-year (36-month) term re-sets with each additional clinic location that D1 services.

9. On or around June 3, 2016, Klasinski and Orthopaedic Associates of Wausau, S.C. ("OAW") entered into an Integration Agreement (the "Integration Agreement").

10. Pursuant to the Integration Agreement, Klasinski and OAW merged their practices to operate under a single practice group successor, OCOW.

11. OAW filed an amendment to its Articles of Organization with the Wisconsin Department of Financial Institutions ("WDFI") to change its name to OCOW.

12. OCOW also registered the tradenames Klasinski Clinic and Stevens Point Orthopedics with WDFI.

13. Pursuant to the Integration Agreement, OCOW assumed Klasinski's obligations under the Agreement.

14. Throughout 2016, D1 managed OCOW/SPO's physical therapy program at OCOW/SPO's main clinic office, which is located at 500 Vincent Street in Stevens Point, Wisconsin.

15. In 2017, OCOW/SPO partnered with Kevin Kirschbaum (now a D1 Training franchisee) to develop an additional clinic location at 5501 E M Copps Drive in Stevens Point, Wisconsin.

16. D1 and D1 Training, which, upon information and belief, is an unregistered tradename used by Sports Training-Stevens Point, LLC, are two separate legal entities.

17. Prior to being acquired by EXOS, D1 provided physical therapy services.

18. D1 Training provides gym services.

19. D1 Training is a franchise headquartered and registered in Tennessee, and one of the franchise locations is D1 Training of Stevens Point, located at 5501 E M Copps Drive in Stevens Point, Wisconsin.

20. In fall 2017, EXOS Physical Therapy and Sports Medicine, LLC ("EXOS") acquired D1.

21. On December 11, 2017, a patient was treated for the first time at OCOW/SPO's 5501 E M Copps Drive clinic location.

22. Section 9.1 of the Agreement states, in relevant part, "[i]t is anticipated that D1 may agree to provide those services at one or more of the Customer's satellite offices. If this occurs, the commencement date for all locations shall be the specific date when D1 provides services to the first patient at the last location in which D1 begins to provide services." (Ex. A at 7).

23. The specific term "therapy services" is defined in Section 1.1 of the Agreement to mean D1's obligation to "[d]evelop, organize, and operate a program for the provision of all rehabilitation services, including, but not limited to, physical therapy, occupational therapy, sports rehabilitation, and industrial rehabilitation, needed by Customer's patients." (*Id.* at 1).

24. The more general term "provide services," as used in Section 9.1 of the Agreement, is undefined. Accordingly, it is not apparent what "services" are necessary to trigger Section 9.1 of the Agreement.

25. However, even if it is assumed that "those services" were interpreted to mean "therapy services," EXOS/D1 has failed to provide the services they were contracted to provide at both of OCOW/SPO's clinic locations.

26. EXOS/D1 had no meaningful involvement at OCOW/SPO's E M Copps Drive clinic location.

27. To the extent that there was any involvement at this location at all, it was through Sports Training – Stevens Point, LLC, which is a separate legal entity that did itself not provide significant services at OCOW/SPO's E M Copps Drive clinic location.

28. Furthermore, when the Agreement was formed, Klasinski did not pay any consideration to extend the terms of the Agreement to future clinic locations it planned to open.

29. The type of contract extension EXOS/D1 seeks to impose also violates Wis. Stat. § 134.49 because EXOS/D1 failed to provide OCOW/SPO with appropriate notice of the same.

30. Despite all of this, EXOS/D1 claims that because a patient was treated for the first time at a new OCOW/SPO clinic location on December 11, 2017, pursuant to Section 9.1 of the Agreement, the Agreement's commencement date is adjusted, and the Agreement does not terminate until December 11, 2022.

31. Conversely, OCOW/SPO contends that Section 9.1 of the Agreement was not triggered by the treatment of a patient at a new OCOW/SPO clinic location on December 11, 2017. Accordingly, the Agreement's commencement date remains the same, and the Agreement terminates on April 1, 2021.

32. The Agreement further contemplates an automatic two-year (24-month) extension if certain "Performance Milestones" were achieved.

33. The Agreement defines "Performance Milestones" as "the occurrence of either of the following, (i) the Facility's gross physical therapy collections equals an amount greater than or equal to Seven Hundred Thousand Dollars ($700,000.00) over the period spanning months twenty-five (25) through thirty-six (36) of the Term or (ii) over the initial thirty six [sic] (36) month term, the Facility's gross physical therapy collections is greater than or equal to one million nine hundred thousand dollars ($1,900,000.00)." (*Id.* at 7).

34. Because the "Performance Milestones" were achieved, the Agreement was extended to April 1, 2021.

35. The provision regarding achieving the "Performance Milestones" does not contemplate any extension beyond the initial automatic two-year (24-month) extension. Accordingly, the Agreement was only extended until April 1, 2021, and terminates on this date.

36. The Agreement also contains a non-solicitation clause.

37. Under the non-solicitation clause, for a one-year (12-month) period after the Agreement terminates, neither OCOW/SPO nor EXOS/D1 is permitted to do any of the following without prior written consent from the other party to the Agreement: "(a) induce or attempt to induce away, or aid, assist, or abet any other party or person in inducing or attempting to induce away from employment or other association with the other party, any employee or independent contractor or agent of the other party; (b) employ, hire or contract for services with any employee of the other party during the twelve (12) month period prior to termination of this Agreement, or (c) interfere with or attempt to interfere with any contractual relationship of the other party." (*Id.* A at 11).

38. Further, throughout the course of the Parties' contractual relationship, EXOS/D1 has repeatedly breached the Agreement by failing to fulfill its obligations under the same.

39. First, Section 1.1 of the Agreement requires EXOS/D1 to develop, organize, and operate a rehabilitation program for OCOW/SPO.

40. EXOS/D1 breached this contractual obligation by asking OCOW/SPO to "double book" patients, which, in many cases, is prohibited by patients' insurance policies.

41. Second, Section 1.3 of the Agreement requires EXOS/D1 to provide a staffing plan for physical therapy and administrative personnel for the provision of physical therapy services. EXOS/D1 must also hire, review, assess, supervise, train, and replace all physical therapists and billing personnel.

42. EXOS/D1 breached this contractual provision because EXOS/D1 has only assisted OCOW/SPO or Klasinski in finding one (1) contract physical therapist. All other physical therapy personnel have been hired, assessed, and reviewed by OCOW/SPO or Klasinski.

43. Third, Section 1.4 of the Agreement requires EXOS/D1 to prepare, provide, and revise personnel policies and procedures for the physical therapists and billing personnel.

44. EXOS/D1 breached this contractual provision by failing to prepare, provide, and revise the necessary policies and procedures.

45. Fourth, Section 1.5 of the Agreement requires EXOS/D1 to maintain and keep the clinical equipment necessary for the provision of therapy services, assess use and performance of the equipment, and train employees on use of the equipment.

46. EXOS/D1 breached this contractual provision because either OCOW/SPO or Klasinski have maintained all equipment necessary for providing services to patients at all of their facilities.

47. Fifth, Section 1.6 of the Agreement requires EXOS/D1 to meet with physicians and therapy personnel on a regular basis to assess the therapy services and provision of such services.

48. EXOS/D1 breached this contractual provision because EXOS/D1 has not met with, or requested to meet with, OCOW/SPO's physician owners in years.

49. Sixth, Section 1.7 of the Agreement requires EXOS/D1 to prepare, provide, and revise policies and procedures for the delivery of therapy services.

50. EXOS/D1 breached this contractual provision by failing to prepare, provide, and revise the necessary policies and procedures.

51. Seventh, Section 1.8 of the Agreement requires EXOS/D1 to recommend procedures for the billing and collection of therapy services.

Case: 3:21-cv-00179-slc   Document #: 1   Filed: 03/15/21   Page 8 of 11

52. EXOS/D1 breached this contractual provision because EXOS/D1 has never recommended any procedures for billing or collections, apart from requesting that therapists bill more units per visit.

53. Finally, Section 1.9 of the Agreement requires EXOS/D1 to comply with all of the Agreement's provisions.

54. Because EXOS/D1 breached seven (7) provisions of the Agreement, EXOS/D1 has also breached Section 1.9 of the Agreement.

## COUNT I:
## DECLARATORY RELIEF – TERMINATION OF AGREEMENT

55. OCOW/SPO re-alleges and incorporates herein by reference each of the foregoing paragraphs as if fully stated herein.

56. EXOS/D1 claims that because a patient was treated for the first time at a new OCOW/SPO clinic location on December 11, 2017, pursuant to Section 9.1 of the Agreement, the Agreement's commencement date is adjusted, and the Agreement does not terminate until December 11, 2022.

57. Conversely, OCOW/SPO contends that Section 9.1 of the Agreement was not triggered by the treatment of a patient at a new OCOW/SPO clinic location on December 11, 2017. Accordingly, the Agreement's commencement date remains the same, and the Agreement terminates on April 1, 2021.

58. An actual, present, and justiciable controversy has arisen between OCOW/SPO and EXOS/D1 regarding the termination of the Agreement.

59. OCOW/SPO seeks declaratory judgment from this Court that, pursuant to the terms of the Agreement, the Agreement terminates on April 1, 2021.

8

## COUNT II:
## DECLARATORY RELIEF – NON-SOLICITATION CLAUSE

60. OCOW/SPO re-alleges and incorporates herein by reference each of the foregoing paragraphs as if fully stated herein.

61. The Agreement contains a non-solicitation clause.

62. Under the non-solicitation clause, for a one-year (12-month) period after the Agreement terminates, neither OCOW/SPO nor EXOS/D1 is permitted to do any of the following without prior written consent from the other party to the Agreement: "(a) induce or attempt to induce away, or aid, assist, or abet any other party or person in inducing or attempting to induce away from employment or other association with the other party, any employee or independent contractor or agent of the other party; (b) employ, hire or contract for services with any employee of the other party during the twelve (12) month period prior to termination of this Agreement, or (c) interfere with or attempt to interfere with any contractual relationship of the other party." (*Id.* at 11).

63. EXOS/D1 claims that this non-solicitation clause is enforceable.

64. OCOW/SPO contends that this non-solicitation clause is unenforceable.

65. An actual, present, and justiciable controversy has arisen between OCOW/SPO and EXOS/D1 regarding the enforceability of the Agreement's non-solicitation clause.

66. OCOW/SPO seeks declaratory judgment from this Court that, as written, the Agreement's non-solicitation clause is unenforceable.

## COUNT III:
## BREACH OF CONTRACT

67. OCOW/SPO re-alleges and incorporates herein by reference each of the foregoing paragraphs as if fully stated herein.

68. The Agreement entered into by Klasinski and D1 on or around April 1, 2016, is a valid and enforceable contract.

69. Pursuant to the Integration Agreement, OCOW/SPO assumed Klasinski's obligations under the Agreement.

70. Upon information and belief, when EXOS acquired D1 in fall 2017, EXOS assumed D1's obligations under the Agreement.

71. EXOS/D1 breached the Agreement, as detailed in paragraphs 38-54 of this Complaint.

72. As a direct and proximate result of EXOS/D1's repeated breaches of the Agreement, OCOW/SPO has sustained damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

OCOW/SPO hereby demands a jury of 12 for all matters so triable. OCOW/SPO requests the following relief from the Court:

    a. An Order declaring that, pursuant to the terms of the Agreement, the Agreement terminates on April 1, 2021;

    b. An Order declaring that, as written, the Agreement's non-solicitation clause is unenforceable;

    c. An Order for an award of compensatory damages;

    d. An Order for pre-judgment and post-judgment interest;

    e. An Order for reasonable costs and attorney's fees pursuant to the Agreement; and

    f. An Order for all such other relief the Court deems just and equitable.

Dated this 15th day of March, 2021.

                                    **AXLEY BRYNELSON, LLP**

                                    *s/ Michael J. Modl*
                                    Michael J. Modl, SBN 1011419
                                    Morgan K. Stippel, SBN 1101434
                                    2 E. Mifflin Street, Suite 200
                                    Post Office Box 1767
                                    Madison, WI 53701-1767
                                    Telephone: (608) 257-5661
                                    Facsimile: (608) 257-5444
                                    mmodl@axley.com
                                    mstippel@axley.com